**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**RICARDO DELGADO,**

       **Plaintiff,**

    **vs.**                                 **Civ. No. 15-196 JCH/GJF**

**LIBERTY MUTUAL FIRE INSURANCE
COMPANY and FARMERS INSURANCE
COMPANY OF ARIZONA,**

       **Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on *Liberty Mutual Fire Insurance Company's Motion for Summary Judgment on Counts V and VI of Plaintiff's Complaint*, based on the statute of limitations.  [Doc. 31]  Plaintiff filed a response [Doc. 34], and Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") filed a reply [Doc. 41].  Having reviewed the motion, briefs, evidence, and relevant law, the Court concludes that the motion should be granted.

**FACTUAL ALLEGATIONS OF THE COMPLAINT**

This case arises out of a motor vehicle accident on July 24, 2008.  Plaintiff alleges that, in the course and scope of his employment with UPS, he was operating a 2002 International tractor truck with two trailers, traveling eastbound on Interstate 10 near mile marker 6.6 in Hidalgo County, New Mexico.  The Complaint alleges that "suddenly and without warning, a driver ('phantom driver') … passed him on the left, veered sharply in front of him and cut him off," causing Plaintiff to suddenly steer to the left to avoid a collision and lose control; the tractor truck and trailers overturned.

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on July 7, 2014, in the Third Judicial District Court, County of Doña Ana, New Mexico.  [Doc. 1-3, p. 1]  The state district court dismissed the claims without prejudice for lack of prosecution on January 20, 2015, and reinstated the case on January 29, 2015, upon Plaintiff's motion.  [Doc. 1-3, pp. 16-21]  Defendant Liberty Mutual filed a notice of removal on March 6, 2015.  [Doc. 1]  Defendant Farmers Insurance Company of Arizona ("Farmers") consented to removal.  [Doc. 1-1]  On June 30, 2015, the Court stayed discovery, pending rulings on anticipated motions for summary judgment by Liberty Mutual.  [Doc. 30]

On July 17, 2015, Liberty Mutual filed *Liberty Mutual Fire Insurance Company's Motion for Summary Judgment on Counts V and VI of Plaintiff's Complaint*.  [Doc. 31]  Plaintiff filed a response [Doc. 34], and Liberty Mutual filed a reply [Doc. 41].

On July 17, 2015, Liberty Mutual filed *Liberty Mutual Fire Insurance Company's Second Motion for Summary Judgment and Supporting Authority*.  [Doc. 32]  Plaintiff filed a response [Doc. 33], and Liberty Mutual filed a reply [Doc. 44].  On September 10, 2015, Plaintiff filed a motion for discovery and motion for leave to file a surreply, arguing that Liberty Mutual's reply contains new evidence to which Plaintiff did not have a fair opportunity to respond or investigate through discovery.  [Doc. 48]

## LEGAL STANDARDS

"The purpose of a statute of limitations is to protect prospective defendants from the burden of defending against stale claims while providing an adequate period of time for a person of ordinary diligence to pursue lawful claims." *Garcia v. LaFarge*, 1995-NMSC-019, ¶ 14, 893 P.2d 428, 433.  In this diversity action, the Court must apply the State of New Mexico's statute of limitations, including tolling and accrual principles.  *Elm Ridge Expl. Co. v. Engle*, 721 F.3d

2

1199, 1210 (10th Cir. 2013); *see Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registr. Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011) (exercising diversity jurisdiction, court applies state substantive law with objective of attaining the result that would be reached in state court).

The statute of limitations begins to run when an action accrues. *Garcia*, 1995-NMSC-019, ¶ 14, 893 P.2d at 433. "The date from which the statute of limitations begins to run <u>may</u> be extended by New Mexico's discovery rule, under which a 'cause of action does not accrue until the plaintiff discovers' the injury." *Elm Ridge Expl. Co.*, 721 F.3d at 1210 (quoting *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 18, 241 P.3d 628, 635; emphasis added) (applying discovery rule to claims of conspiracy and breach of contract); *see* NMSA 1978, § 37-1-7 (1880). Under the discovery rule, the statute of limitations begins to run "when the plaintiff acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action"; this is referred to as "inquiry notice." *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 9, 298 P.3d 500, 503 (internal quotation marks omitted); *see Gerke v. Romero*, 2010-NMCA-060, ¶ 10, 237 P.3d 111, 115. The question is whether the plaintiff possesses knowledge that "'would, on reasonable diligent investigation, lead to knowledge of'" the injury. *Wilde*, 2010-NMCA-085, ¶ 18, 241 P.3d at 635 (quoting *Ambassador E. Apts., Inv'rs v. Ambassador E. Invs.*, 1987-NMCA-135, ¶ 7, 746 P.2d 163, 165)). Actual knowledge is not required. *Rhinehart v. Nowlin*, 1990-NMCA-136, ¶ 39, 805 P.2d 88, 97. "Whatever puts a party upon inquiry is sufficient 'notice' and the party has a duty to inquire or he will be chargeable with all the facts." *Id.*; *see Yurcic*, 2013-NMCA-039, ¶ 9, 298 P.3d at 504.

"The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action." *Coslett v. Third St. Grocery*, 1994-NMCA-046, ¶ 24, 876 P.2d 656, 664.

Whether the plaintiff knows that those facts establish a legal cause of action is not relevant. *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMC-112, ¶ 29, 267 P.3d 70, 77. The statute of limitations begins to run even though the plaintiff lacks knowledge of the full extent of the injury. *Gerke*, 2010-NMCA-060, ¶ 10, 237 P.3d at 115.

"When a defendant makes a prima facie showing that a claim is time barred, a plaintiff attempting to invoke the discovery rule has the burden of 'demonstrat[ing] that if [he or] she had diligently investigated the problem [he or] she would have been unable to discover' the facts underlying the claim." *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 28, 140 P.3d 532, 539 (involving motion to dismiss); *see Yurcic*, 2013-NMCA-039, ¶¶ 28-30, 298 P.3d at 508-09 (discussing shifting burdens of proof). The party invoking the discovery rule has the burden of demonstrating that it lacked knowledge of the cause of action and, even if that party had diligently investigated, it could not have discovered the problem or the cause of injury. *Martinez v. Showa Denko, K.K.*, 1998-NMCA-111, ¶ 22, 964 P.2d 176, 181 (involving summary judgment motion); *McNeill v. Rice Eng'g & Operating Inc.*, 2006-NMCA-015, ¶ 40, 128 P.3d 476, 486 (addressing plaintiffs' burden in opposing summary judgment motion). In *Martinez*, the court held that even though there were divergent medical opinions regarding the cause of the plaintiff's injuries, the statute of limitations began to run because the plaintiff had information that there was a "<u>possible</u> connection" between her injuries and a dietary supplement; this information would put a reasonable person on notice. *Martinez*, 1998-NMCA-111, ¶¶ 24-25, 964 P.2d at 182 (emphasis added).

"'Historically, [New Mexico courts] have characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn.'" *Yurcic*, 2013-NMCA-039, ¶ 10, 298 P.3d at 504 (quoting *Williams v. Stewart*, 2005-NMCA-061, ¶ 16, 112

P.3d 281, 286).  But when the relevant facts are undisputed, summary judgment may be granted. *See id.* ¶¶ 19-22, 298 P.3d at 506-07 (affirming summary judgment on the point that plaintiff had inquiry notice of claims against City before two-year statute of limitations period); *see Brunacini v. Kavanagh*, 1993-NMCA-157, ¶ 29, 869 P.2d 821, 826 (stating that although New Mexico caselaw states that discovery rule "generally" presents factual questions for jury, when the relevant facts are undisputed the court can decide the issue as a matter of law); *Williams v. Stewart*, 2005-NMCA-061, 137 N.M. 420, 426–27, 112 P.3d 281, 287–88 (same).  And, although sitting in diversity, this Court applies federal procedure concerning summary judgment standards at any event.  *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007).

## UNDISPUTED MATERIAL FACTS

The following are set forth by Liberty Mutual as undisputed material facts.  [Doc. 31, p. 4]  Plaintiff's response does not dispute these facts.  [Doc. 34, p. 2]

1.  At the time that Plaintiff made his claim for Uninsured Motorist ("UM") benefits under the Liberty Mutual policy, Gallagher Bassett was UPS's third-party administrator of the Liberty Mutual policy issued to UPS.

2.  On November 25, 2008, Gallagher Bassett, through its counsel, on behalf of UPS and Liberty Mutual, denied Plaintiff's claim for UM benefits on the basis that UPS rejected UM coverage under the Liberty Mutual policy.

3.  Neither Liberty Mutual, Gallagher Bassett, nor any of their agents or representatives had any contact or communications whatsoever with Plaintiff or his counsel from November 25, 2008, when the UM claim was denied, to July 7, 2014, when Plaintiff filed this lawsuit.

**DISCUSSION**

Plaintiff seeks declaratory judgment that Defendants are liable on uninsured motorist ("UM") coverage.  Liberty Mutual issued an insurance policy to UPS, Plaintiff's employer. Counts V and VI are asserted against "Defendants"; the motion before the Court states that Farmers "concurs."  Since Farmers does not join the motion, and since the undisputed material facts concern only Liberty Mutual, the Court will limit this Order to dismissing Counts V and VI against Liberty Mutual.

Count V of the Complaint asserts a claim against both Defendants for violation of the New Mexico Insurance Code, NMSA 1978, § 59A-16-20 (1997).  The Complaint asserts the following as violations of that statute:

> 36.    Specifically, Defendants, through their employees and/or agents, committed the following acts, which are defined by the Code as prohibited practices:
>
> (a)  Misrepresenting to insured pertinent facts or policy provisions relating to coverages at issue;
>
> (b)  not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claim in which liability has become reasonably clear;
>
> (c)  compelling insured to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered; and
>
> (d)  failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

[Doc. 1-3, p. 6]  Plaintiff's claim under Count V accrued on the date of each instance of conduct alleged above (unless extended by the discovery rule).  The Complaint does not specify dates on which each of the above quoted instances of conduct occurred; however, Plaintiff admits Liberty Mutual's asserted undisputed material fact that Liberty Mutual and its agents had no contact or

communications with Plaintiff or his counsel after November 25, 2008.  The Court therefore finds that the alleged violations of the Insurance Code occurred on or before that date.  The Court recognizes that some of the conduct alleged under Paragraph 36 of the Complaint may have occurred before November 25, 2008, in which case a claim might have accrued earlier.  But it is sufficient to resolve the current motion for the Court to conclude that the violations asserted under Count V occurred at latest by November 25, 2008.

Count VI asserts a claim against both Defendants for violation of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -13 (2009).  The Complaint asserts the following as violations of that statute:

> 42.   Specifically, Defendants, through their employees and agents, knowingly caused confusion or misunderstanding as to the certification of insurance services contracted for, used ambiguity as to a material fact or failed to state a material fact that deceived or tended to deceive, and failed to deliver the quality of insurance services contracted for.

> 43.   In addition, Defendants' actions constitute "unconscionable trade practices" as defined in the UPA in that the insurance services provided to Plaintiff resulted in a gross disparity between the value received by the insured and the price paid by the policy holders for each, respective insurance policy.

[Doc. 1-3, p. 7]  Again the Complaint does not specify dates for each of the above quoted instances of conduct.  The Court again finds that the alleged violations of the UPA occurred on or before November 25, 2008, based on Plaintiff's admission that Liberty Mutual and its agents had no contact with Plaintiff or his counsel after November 25, 2008.  As noted for Count V, a claim might have accrued earlier if some of the conduct occurred earlier, but it is sufficient here for the Court to conclude that the violations asserted under Count VI occurred at latest by November 25, 2008.

**I. Applicable Statute of Limitations**

The Court applies the New Mexico statute of limitations and New Mexico law regarding accrual and tolling in this diversity action. *See Elm Ridge Expl. Co.*, 721 F.3d at 1210. Liberty Mutual argues that Plaintiff's statutory claims under Counts V and VI are subject to New Mexico's "catchall" four-year statute of limitations under NMSA 1978, Section 37-1-4 (1880). Plaintiff argues that Counts V and VI are subject to New Mexico's six-year statute of limitations applicable to claims for breach of a written contract, NMSA 1978, § 37-1-3 (2015). [Doc. 34, p. 3]

In *Martinez*, the plaintiffs brought an action under the New Mexico Trade Practices and Frauds Act of the Insurance Code, NMSA 1978, §§ 59A-16-1 to -30 (1997). *Martinez v. Cornejo*, 2009-NMCA-011, 208 P.3d 443. The plaintiffs alleged that the insurance company had violated Section 59A-16-20; Section 59A-16-30 creates a private right of action for such a violation. *Id.* ¶¶ 1-2, 208 P.3d at 445. The New Mexico Court of Appeals held that the four-year "catchall" statute of limitations under Section 37-1-4 applies for such actions. *Id.* ¶ 27, 208 P.3d at 451-52. *Martinez* states that, for a cause of action to come within the six-year statute of limitations for a claim founded on a written contract, "the nature of the right sued upon must be based on the breach or nonperformance of a term in a written contract." *Id.* ¶ 29, 208 P.3d at 452. But the plaintiff's complaint asserted that the insurance company violated the New Mexico Trade Practices and Frauds Act, not that it breached any contractual duties. *Id.* ¶ 30, 208 P.3d at 452. The claim was "solely derived from statute," and not from breach of contract; as a claim founded on violation of the statutes, the claim fell under the four-year catchall statute of limitations of Section 37-1-4. *Id.* ¶ 44, 208 P.3d at 456; *see also Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 22, 126 P.3d 1215, 1220.

In *Nance*, the New Mexico Court of Appeals held that the four-year catchall statute of limitations of Section 37-1-4 applies for violations of both the Insurance Code and the Unfair Practices Act.  *Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 22, 126 P.3d 1215, 1220; NMSA 1978, §§ 59A-16-1 to -30 (2003) (Insurance Code); NMSA 1978, §§ 57-12-1 to -13 (2005) (Unfair Practices Act).  *Nance* holds that such claims are founded on violations of statutes and thus constitute "other unspecified actions," to which Section 37-1-4 applies.  *Nance*, 2006-NMCA-012, ¶ 22, 126 P.3d at 1220.  In contrast, a claim founded upon a contract requires that the claim "'be brought for breach of contract, one which requires a policy to do the things for the nonperformance of which the action is brought.'"  *Id*. ¶ 11, 126 P.3d at 1218 (internal quotation marks omitted).  A claim "is founded upon a contract if the obligation or liability grows immediately out of the written instrument." *Id*.

*Nance* held that there was no written contract relating to the plaintiff's claims.  *Nance*, 2006-NMCA-012, ¶¶ 16-21, 126 P.3d at 1219-20.  Because there was no written contract, Section 37-1-3, which sets the statute of limitations only for claims on written contracts, could not apply.  The New Mexico Court of Appeals observed in *Martinez* that because *Nance* involved an unwritten insurance contract, the case did not extensively consider the statute-of-limitations issue.  *Martinez*, 2009-NMCA-011, ¶ 28, 208 P.3d at 452.  *Martinez* therefore elaborated on *Nance*, concluding that the nature of a third-party claim under the Trade Practices and Frauds Act is statutory in nature and not contractual, even when there is a written contract to which Section 37-1-3 could be applicable.  *Martinez*, 2009-NMCA-011, ¶ 28, 208 P.3d at 452.

Plaintiff's response argues that the six-year statute of limitations for written contracts applies, citing *Ellis v. Cigna Property & Casualty Companies*, 1999-NMCA-034, 989 P.2d 429. [Doc. 34, pp. 2-3]  Plaintiff is correct that in *Ellis* the New Mexico Supreme Court held that the

six-year statute of limitations of Section 37-1-3 applied. *Id.* ¶ 6, 989 P.2d at 430.  But *Ellis* involved the plaintiff's claim against his insurance company under his uninsured/underinsured motorist coverage, seeking to compel his insurance company to perform its obligation to provide the UM coverage guaranteed under his insurance policy. *Id.* ¶¶ 5, 989 P.2d at 430.  The "nature of the right sued upon" was "based on the breach or nonperformance of a term in a written contract." *Martinez*, 2009-NMCA-011, ¶ 29, 208 P.3d at 452.  The claim in *Ellis*, therefore, was founded directly upon the contract.

For the date of accrual, Plaintiff cites *Brooks v. State Farm Insurance Co.*, 2007-NMCA-033, ¶ 10, 154 P.3d 697, 700.  In *Brooks*, the claim was to compel the insurance company to perform its obligation to comply with the provisions of the insurance policy, by arbitrating the disputed claim for UM benefits as provided in that policy. *Id.* ¶ 6, 154 P.3d at 699.  *Brooks* held that the six-year statute of limitations began to run "on the date of the earliest event in the nature of a breach of the insurance contract," when there is "a justiciable claim based on a 'failure to do that which is required under the terms of the policy.'" *Id.* ¶¶ 11-15, 154 P.3d at 700-01 (quoting *Snyder v. Case*, 611 N.W.2d 409, 415 (Neb. 2000)).

In contrast to *Ellis* and *Brooks*, in the case before this Court, Counts V and VI of the Complaint are founded on the same statutes at issue in *Martinez* and *Nance*.  As in the latter cases, Plaintiff's claims under Counts V and VI are not founded upon a contract but upon violations of statutes; these claims are not "based on the breach or nonperformance of a term in a written contract." *Martinez*, 2009-NMC-011, ¶ 29, 208 P.3d at 452.  Plaintiff is not seeking to compel Liberty Mutual to do something that is required under the terms of the insurance policy; therefore, *Ellis* and *Brooks* are inapposite.  The Court therefore concludes that the four-year statute of limitations of Section 37-1-4 applies, as in *Martinez* and *Nance*.

The claims under Counts V and VI accrued on or before November 25, 2008, the date on which Liberty Mutual denied Plaintiff's claim (unless the discovery rule extends the time).  *See Nance*, 2006-NMCA-012, ¶ 13, 126 P.3d at 855.  Plaintiff's Complaint—filed on July 7, 2014—was too late under the four-year statute of limitations, unless the discovery rule applies.

## II.  Application of New Mexico's Discovery Rule

Plaintiff argues that New Mexico's discovery rule extended the time for him to file his claims under Counts V and VI, because prior to issuance of the New Mexico Supreme Court's opinion in *Jordan*, "it appeared that there was simply no insurance coverage" when Plaintiff's UM claim was denied by Liberty Mutual on November 25, 2008.  [Doc. 34, p. 4]  *Jordan v. Allstate*, 2010-NMSC-051, 245 P.3d 1214.  Plaintiff argues that he filed the Complaint within the four-year statute of limitations,[1] because under New Mexico's discovery rule, "or at least in a manner akin [to] that doctrine," the statute of limitations on Counts V and VI did not begin to run until the New Mexico Supreme Court issued its opinion in *Jordan* on October 18, 2010.  [Doc. 34, p. 4]  Plaintiff argues that the Complaint filed on July 7, 2014, was timely.

Liberty Mutual's reply observes that New Mexico courts have not applied the discovery rule to violations of the New Mexico Insurance Code and the Unfair Practices Act, and argues (though without citation to specific authority) that New Mexico's discovery rule does not apply to statutory claims in general.  [Doc. 41, p. 4]  The discovery rule, however, has been applied to a variety of claims, some involving statutes, including:  exposure to toxic mold, sexual abuse, products liability, professional negligence, and the Workers' Compensation Act.  *Maestas v. Zager*, 2007-NMSC-003, ¶ 13, 152 P.3d 141, 145 (stating that New Mexico consistently applies

---

[1] Although the previous section of Plaintiff's response argued that the statute of limitations was six years, Plaintiff appears to argue in this section that his Complaint was timely under the discovery rule even under a four-year statute of limitations.  [Doc. 34, p. 4]

discovery rule under Tort Claims Act); *Gerke*, 2010-NMCA-060, ¶¶ 10-11, 237 P.3d at 115 (stating that discovery rule has been applied "in various New Mexico cases," including products liability and professional negligence, and applying it in toxic mold case); *Coslett*, 1994-NMCA-046, ¶ 24, 876 P.2d at 664 (involving Workers' Compensation Act).

Liberty Mutual also argues that even if the discovery rule were applicable, the issue to which *Jordan* is relevant—the validity of a rejection of UM coverage—is relevant only to the breach of contract claim and not to the statutory claims under Counts V and VI.  Plaintiff failed to articulate an argument on just how *Jordan* is relevant to the statutory claims.  The Court agrees with Liberty Mutual that *Jordan* is not relevant to at least some of the conduct alleged in Counts V and VI (e.g., Complaint ¶ 36(d):  failing to promptly provide reasonable explanation for denial of claim or offer of compromise settlement).  But unless Liberty Mutual were obligated to provide UM benefits—the issue to which *Jordan* is relevant—some conduct would not support a claim (e.g., Complaint ¶ 36(b):  not attempting in good faith to effectuate settlement when liability has become reasonably clear); therefore, *Jordan* may be partially relevant.

The parties also disagree about choice of law.  Plaintiff's response assumes that the relevant issue under the discovery rule is the validity of the waiver of New Mexico UM coverage[2] under New Mexico law.  Both parties attached the waiver of New Mexico UM coverage as exhibits.  [Doc. 31, p. 16; Doc. 34-1]

The Court concludes, however, that it is not necessary to resolve all of these issues in order to decide the motion currently before the Court.  Plaintiff had the burden of showing that

---

[2] With respect to another motion, the parties argue about whether it is the rejection of UM coverage in New Mexico or another state that is relevant.  [Docs. 32, 33, 44]  Because the Court determines that this question would not change the Court's conclusion on the statute-of-limitations issue currently before the Court, the Court will assume arguendo that waiver of New Mexico UM coverage is relevant here.

the discovery rule extended the time to file his claims under Counts V and VI. The Court addresses the argument as framed by Plaintiff. Assuming arguendo that New Mexico's discovery rule applies to statutory claims, and assuming arguendo that *Jordan* is relevant to the statutory claims under Counts V and VI, the Court nevertheless concludes that the Plaintiff's Complaint was untimely with respect to Counts V and VI.

The relevant facts here are undisputed, so the Court can decide the issue as a matter of law. Plaintiff admits that Liberty Mutual denied Plaintiff's claim for UM benefits on November 25, 2008, and further admits that neither Liberty Mutual, Gallagher Bassett, nor any of their agents or representatives had any contact or communications with Plaintiff or his counsel after November 25, 2008.

Liberty Mutual's motion made a prima facie case that the four-year statute of limitations had expired and Counts V and VI were time-barred; it then became Plaintiff's burden to show that the discovery rule extended the time in which to file his Complaint. *See Butler*, 2006-NMCA-084, ¶ 28, 140 P.3d at 539; *Yurcic*, 2013-NMCA-039, ¶¶ 28-30, 298 P.3d at 508-09. Plaintiff was required to show that he lacked knowledge of the causes of action and, even if he had diligently investigated, he could not have discovered his causes of action. Plaintiff's response sets forth a cursory argument, contending in conclusory fashion that the statute of limitations only began to run on October 18, 2010, when the New Mexico Supreme Court issued its opinion in *Jordan*. [Doc. 34, pp. 3-4] Plaintiff argues—in a footnote—that the written waiver of New Mexico[3] UM coverage does not comply with the requirements of *Jordan v. Allstate* because: (1) that waiver "does not provide the signer with a 'menu of coverage options and corresponding premium costs'"; and (2) there was no effort to incorporate the rejection into the

---

[3] Plaintiff advances no different argument with respect to waivers of UM coverage in any other states.

policy itself, without even the policy number being shown on the written rejection.  [Doc. 34, p. 4 & n.3 (quoting *Jordan v. Allstate*, 2010-NMSC-051, ¶¶ 21 & 22, 245 P.3d at 1221)]

 With respect to Plaintiff's first asserted defect, the Court observes that *Jordan* does not require that the written waiver itself must contain the "menu" of coverage options.  The New Mexico Court of Appeals held that *Jordan* does not require that the written waiver itself must contain the "menu" of coverage options.  *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶¶ 12-24, 320 P.3d 482, 485-88.  The Court concludes that the New Mexico Supreme Court would reach the same holding.  *See Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (stating that federal court's task in applying state's law is to follow or predict what state's highest court would do, and federal court may seek guidance from state's lower court decisions); *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (same).  *Jordan* holds that the insurer must offer UM coverage in an amount equal to the policy's liability limits and must provide the premium charge for that maximum amount, together with the premium cost for the minimum UM coverage allowed by New Mexico's Uninsured Motorists' Insurance statute.  NMSA 1978, § 66-5-301(A) (1983); *Jordan*, 2010-NMSC-051, ¶ 21, 245 P.3d at 1221.  But *Jordan* does not "prescribe any one particular way the information must be provided."  *Curry*, 2014-NMCA-031, ¶ 24, 320 P.3d at 488.  Plaintiff does not argue here that the required information was not provided in a way allowing UPS to make an informed decision, *see id.*, but merely argues that the written waiver did not include the "menu" of coverage options and costs.  If any other levels of UM coverage are offered, the premium cost for those levels must also be provided; *Jordan* does not require, however, that such additional levels be offered.  Whether Liberty Mutual offered the maximum and minimum levels of UM coverage and informed UPS of

14

the two premium costs are factual issues—on which Plaintiff presents no evidence.[4]  It was Plaintiff's burden to articulate an argument under the discovery rule and to show the relevant facts, identifying evidence in support of his allegations.  Since Plaintiff failed to do so, the Court rejects Plaintiff's argument on this point.

Plaintiff ignores another principle critical to his argument.  Plaintiff's argument is that he could not, with due diligence, have discovered that he had a cause of action until the New Mexico Supreme Court issued its opinion in *Jordan* on October 18, 2010.  Plaintiff attaches an affidavit of his counsel, declaring that he discovered that Plaintiff had a cause of action when, sometime after October 18, 2010, he became aware of *Jordan*.  [Doc. 46]  Plaintiff's response does not explain how this argument is viable, given the critical distinction between the "existence of predicate facts" and discovery of the legal theory.

The key question under the discovery rule is when a plaintiff knows the factual, not the legal, basis for a cause of action:

> "The key consideration under the discovery rule is the <u>factual, not the legal, basis</u> for the cause of action.  The action accrues when the plaintiff knows or should know the relevant facts, <u>whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action.</u>  Were the rule otherwise, the discovery rule would postpone accrual in every case until the plaintiff consults an attorney."

*Coslett v. Third St. Grocery*, 1994-NMCA-046, ¶ 24, 876 P.2d 656, 664 (emphasis added) (quoting *Allen v. State*, 826 P.2d 200, 203 (Wash. 1992) (en banc)).  New Mexico courts continue to emphasize that the critical issue is when a plaintiff knows the facts, not whether the plaintiff knows he has a legal cause of action.  "A plaintiff's discovery of relevant facts is distinct from his or her discovery of legal rights."  *Maestas v. Zager*, 2007-NMSC-003, ¶ 21, 152 P.3d 141, 147.  "The action accrues when the plaintiff knows or should know the relevant facts,

---

[4] The Court recognizes that Plaintiff filed a motion for discovery under Fed. R. Civ. P. 56(d), but that motion does not concern this point, but instead concerns a different motion.  [Docs. 32, 48]

whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action.'" *Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 8, 306 P.3d 524, 529 (quoting *Christus St. Vincent Reg'l Med. Ctr. v. Duarte–Afara*, 2011–NMCA–112, ¶ 29, 267 P.3d 70, 77 (internal quotation marks omitted)).  "With regard to the discovery rule, our case law thus plainly differentiates between discovering the existence of predicate facts to a cause of action and discerning the theory of law under which to proceed." *Id*.

Plaintiff, however, argues that he did not know that he had a cause of action until his attorney saw the New Mexico Supreme Court opinion in *Jordan*.  Plaintiff was aware of the facts and circumstances by November 25, 2008.  His asserted lack of awareness that these facts and circumstances were "enough to establish a legal cause of action" does not constitute a viable argument under New Mexico's discovery rule.  *Slusser*, 2013-NMCA-073, ¶ 8, 306 P.3d at 529 (internal quotation marks omitted).

Confirmation that discovery of a legal theory is not cognizable under New Mexico's discovery rule is found in numerous statements that application of the rule has generally been characterized as a jury question by New Mexico courts.  *See, e.g., Yurcic*, 2013-NMCA-039, ¶ 10, 298 P.3d at 504; *Brunacini*, 1993-NMCA-157, ¶ 29, 869 P.2d at 826; *Williams*, 2005-NMCA-061, 112 P.3d at 287–88.  Juries decide factual issues, like when a plaintiff knew or should have discovered the facts and circumstances underlying his claim.  Juries do not decide legal issues, like whether *Jordan* set forth a new and previously unavailable legal theory.

The Court concludes that New Mexico's discovery rule does not countenance Plaintiff's argument that the statute of limitations was extended by his discovery of a legal theory in *Jordan*.  But even if such an argument were permissible, Liberty Mutual persuasively argues that the principles relied on by Plaintiff were part of "well settled" law in New Mexico by 2008,

rather than new principles established in the New Mexico Supreme Court's opinion in *Jordan*. [Doc. 41, pp. 6-10]   Liberty Mutual argues that with due diligence Plaintiff could have discovered his causes of action under Counts V and VI because New Mexico law prior to October 18, 2010, supported those claims.  [Doc. 41, pp. 5-10]

The New Mexico Supreme Court made clear in *Jordan* that it was not establishing new principles of law.  Although "detail[ing] for the first time the technical requirements for a valid rejection of UM/UIM coverage," the New Mexico Supreme Court emphasized that its holding did not establish "a new principle of law," but was instead "based on settled principles articulated in twenty years of UM/UIM jurisprudence."  *Jordan*, 2010-NMSC-051, ¶ 27, 245 P.3d at 1222 (internal quotation marks omitted).  This was a critical factor in the decision to make the holding retroactive.  *Id*.  The New Mexico Supreme Court cited its opinions in *Romero* and *Montano*, in addition to New Mexico regulations, to show that *Jordan* was based on well-settled principles. *Id*.

A current New Mexico regulation provides:

13.12.3.9. Rejection of uninsured motorist coverage

The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance.

N.M. Admin. Code 13.12.3.9 (compiled 1997).  A version of this regulation has been in effect since 1967.  The version in effect in 1990, identical to the current version, was quoted, discussed, approved, and applied in 1990 by the New Mexico Supreme Court in *Romero*.  *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 4, 803 P.2d 243, 248; *see* 13.12.3.9 NMAC (11/30/01) (identical to current version except for format of citation to statute); *Jordan*, 2010-NMSC-051, ¶ 27, 245 P.3d at 1222 (stating that *Romero* demonstrated that principles applied in *Jordan* were

based on long-settled law).  *Romero* held that a written rejection of UM coverage, which was in some way made part of the insurance policy, was required.  *Romero*, 1990-NMSC-111, ¶¶ 8-17, 803 P.2d at 245-48; *see Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 8, 923 P.2d 588, 590 (reaffirming that rejection must be made part of the insurance policy).

In 2004, the New Mexico Supreme Court opinion in *Montano* explicitly required insurers to provide premium costs for each available level of stacked UM/UIM coverage.  *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 20, 92 P.3d 1255, 1260-61.  The New Mexico Supreme Court in *Jordan* cited *Montano* in support of the conclusion that *Jordan* was "based on settled principles articulated in twenty years of UM/UIM jurisprudence," even though the requirement that premium costs be provided for each level of coverage had not previously been "expressly articulated."  *Jordan*, 2010-NMSC-051, ¶ 27, 245 P.3d at 1222.

And one year before the New Mexico Supreme Court issued its opinion in *Jordan*, the New Mexico Court of Appeals issued a published opinion setting forth the principles affirmed by the Supreme Court.  *Romero v. Progressive Nw. Ins. Co.*, 2010-NMCA-024, ¶ 9, 230 P.3d 844, 847.  The Supreme Court opinion in *Jordan* affirmed *Romero* and two unpublished decisions from the Court of Appeals: *Jordan v. Allstate Ins. Co.*, 2009 WL 6634039 (Oct. 29, 2009); *Lucero v. Trujillo*, 2010 WL 3968651 (Jan. 7, 2010).

In *Romero*, the New Mexico Court of Appeals held that insurers are required to offer UM coverage up to the level of the liability limits of the policy, and also held that purchase of UM coverage in an amount less than the policy's liability limits constitutes a rejection of the maximum amount of UM coverage.  *Romero*, 2010-NMCA-024, ¶¶ 22-26, 230 P.3d at 849.  Because such a purchase constitutes a rejection, the Court of Appeals held, that rejection must satisfy the regulation requiring that it be made part of the policy or else it is not valid.  *Id.* ¶¶ 27-

18

33, 230 P.3d at 849-50.  The Court of Appeals further held that when such a rejection is not valid, UM coverage will be read into the policy.  *Id.* ¶¶ 38-39, 230 P.3d at 851.  Thus the Supreme Court opinion in *Jordan* established no new principles when it affirmed these holdings by the Court of Appeals.

In addition to affirming *Romero* in *Jordan*, the New Mexico Supreme Court stated in *Weed Warrior* that it agreed on both points with the New Mexico Court of Appeals' decision in *Romero*.  *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 4, 245 P.3d 1209, 1211.  *Weed Warrior*, therefore, did not decide any new principle of law that aids Plaintiff in his argument that there was new law extending the statute of limitations in his case under the discovery rule.

The New Mexico Court of Appeals issued its opinion in *Romero* on October 26, 2009. New Mexico Rule 12-405 expressly states that a published opinion from the Court of Appeals is entitled to precedential effect when filed.  Although the Supreme Court granted the petition for certiorari, the Rule expressly states that this does not affect the precedential effect:  "A petition for a writ of certiorari filed pursuant to Rule 12-502 NMRA or a Supreme Court order granting the petition does not affect the precedential value of an opinion of the Court of Appeals, unless otherwise ordered by the Supreme Court."  Rule 12-405 NMRA.  This principle has been reaffirmed and applied in a number of cases—including one of the unpublished cases consolidated in the Supreme Court opinion in *Jordan*.  *See State v. Smith*, 2013-NMCA-081, ¶ 3 n.1, 308 P.3d 135, 136 n.1; *Arco Materials, Inc. v. State, Taxation & Revenue Dep't*, 1994-NMCA-062, ¶ 3, 878 P.2d 330, 332, *rev'd on other grounds sub nom. Blaze Constr. Co. v. Tax. & Rev. Dep't*, 1994-NMSC-110, 884 P.2d 803; *Lucero v. Trujillo*, 2010 WL 3968651, at *1 (N.M. Ct. App. 2010) (rejecting insurer's request to stay case pending resolution of cert petition,

and applying published Court of Appeals opinion in *Romero* as controlling precedent), *aff'd sub nom. Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 245 P.3d 1214.

The Court agrees with Liberty Mutual's argument that, even if the New Mexico discovery rule were applicable, Plaintiff's causes of action under Counts V and VI accrued before October 18, 2010, when the New Mexico Supreme Court issued its opinion in *Jordan*. The statute of limitations would have begun to run at least by October 26, 2009, when the New Mexico Court of Appeals issued its published opinion in *Romero*. The four-year statute of limitations on Counts V and VI had expired before Plaintiff filed his Complaint on July 7, 2014.

The Court observes that this is not a case in which there was New Mexico caselaw explicitly precluding Plaintiff's particular cause of action, and a later case overruling that caselaw; in such a situation Plaintiff's argument might be tenable that the statute of limitations began to run from the date of that later case. Instead, this is a case in which the New Mexico Supreme Court stated that its holding in *Jordan* was "based on settled principles articulated in twenty years of UM/UIM jurisprudence." *Jordan*, 2010-NMSC-051, ¶ 27, 245 P.3d at 1222. Plaintiff's argument that he only discovered that he had a cause of action when the Supreme Court issued its opinion in *Jordan* is not cognizable under New Mexico's discovery rule, both because *Jordan*'s critical principles had been established before and because the key issue under the discovery rule is when a plaintiff knows the facts, not whether the plaintiff knows he has a legal cause of action.

**CONCLUSION**

The Court concludes that Liberty Mutual has demonstrated that it is entitled to partial summary judgment on Counts V and VI, because the undisputed facts show that Plaintiff filed the Complaint in state court more than four years after the latest date on which these claims

accrued.  The date of accrual was not extended by New Mexico's discovery rule; the Complaint was therefore filed after expiration of the four-year statute of limitations applicable under New Mexico's Insurance Code and Unfair Practices Act.

Counts V and VI are asserted against all Defendants.  Liberty Mutual's motion states that Farmers "concurs," but Farmers did not join in the motion.  And the undisputed facts in the motion concern only Liberty Mutual's conduct.  Since Farmers has not shown the Court, by evidence or assertions of undisputed facts, the dates of any relevant conduct, the date of accrual of Plaintiff's claims against Farmers under Counts V and VI is undetermined; the Court will not and could not determine whether the four-year statute of limitations had expired for the claims against Farmers.  The Court therefore limits this Order to dismissing Counts V and VI against Liberty Mutual; Counts V and VI as asserted against Farmers remain in the case.

**IT IS THEREFORE ORDERED that** *Liberty Mutual Fire Insurance Company's Motion for Summary Judgment on Counts V and VI of Plaintiff's Complaint* [Doc. 31] is **GRANTED**.

**UNITED STATES DISTRICT JUDGE**